Next case, Scott Fulvack v Workers' Compensation Commission 5100312. Counsel, please. If it pleases the Court, Justices and Counsel, my name is Audra Zobris, and I'm here today representing the appellant in this case, Mr. Scott Fulvack. Obviously, this is a Workers' Comp appeal, and it had previously been reviewed in the Circuit Court in Madison County. This, again, is another manifest weight case. This is a situation where we're balancing the opinions, considered medical opinions, of different treaters and experts. If you get too far into the legal arguments, as you know, the appellant filed a motion to dismiss the appeal on the basis that you asserted the issue of the arbitrator or the commission failing to articulate their reasons for denying the claim. Opposing counsel asserts that issue is being raised for the first time before this Court, which, ostensibly, if true, could be a problem. So what's your response to his motion to dismiss? Well, Your Honor, in response to that motion, it is true that there is a statement in the brief that talks about Keep your voice up, please. Yes, sir. It is true that there is a statement in the brief with regard to the particular page that states the issue that talks about something a little bit different than manifest weight. However, manifest weight is discussed in the brief at pages 1 and 25. I would say that it was a mistake that that made it to the first page, and that our manifest weight argument is the same thing that we've argued since the time of the arbitrator's decision, and that there's nothing about that argument that's any different, and that there is no prejudice to any party in the case because there was a mistake on that page. It is still argued that manifest weight is an issue. Well, Belabrine, what you're saying is you're acknowledging that you listed only one issue in the brief, but the text of the brief established that you did comment on both. That is correct. Yes, sir. With regard to the manifest weight argument, we have – and it is agreed that there was a work-related accident that happened in this case. Mr. Fobak was working on a bridge. He fell, was able to secure his hand on a piece of rebar that was sticking out of the concrete, and he fell kind of twisting and ended up with a laceration that was immediately apparent at the time. He was taken to emergency care, Anderson Hospital, where he received treatment for that laceration, and he also went to a facility called Midwest Occupational Medicine. I would like to do this to you, but there's also another threshold matter. One of your arguments is, is it not that the arbitrator did not provide detailed findings of fact to provide meaningful review, correct? That is in the brief, Your Honor, yes. Did anybody, you or the respondent, ever request, as you know, under the written findings of fact? Not that I'm aware of, Your Honor. So you're complaining about it, but you didn't request it. But then as I was perusing the briefs and the record again today, you know, unless I missed something, I'm looking at three and a half pages of findings of fact by the arbitrator. Yes, Your Honor. Where did you get the idea he didn't make any findings of fact? Your Honor, I don't have a good answer for you other than to say that I'm not standing here today complaining of that issue. I'm complaining of a manifest way. That's good. So now you're going to get into the merits of it, right? Yes, sir. Originally, again, the gentleman treated for a laceration injury, 10 days later he had stitches removed. At that time, when he went back, he was given a note releasing him to work. He went back to work, was laid off. He was symptomatic, went to treat with his own physician, who found that he did have some shoulder and neck pain issues, and referred him to specialists. First referred him to Dr. Hansen at SIU School of Medicine, who documented positive clinical findings with a preliminary diagnosis of a shoulder strain and cervical spine disorder, for which he also then sent him to Dr. Freitag, also at SIU, to deal with his back problems, with which he underwent an EMG with positive findings, a surgery, et cetera. At that time, then, his work coverage was cut off and he was unable to continue treatment with that. There's another doctor involved in this case, and that is a Dr. Cantrell, who is the doctor hired by the company in this case. Dr. Cantrell, when he reviewed the case and saw Dr. or Mr. Philback, also noted a complaint of neck and shoulder pain. He testified at his deposition that there were multiple positive findings regarding the right shoulder. Then these findings were what one would see in shoulder pathology rather than cervical spine pathology. So he believed this to be more of a shoulder problem than a neck problem. Can we cut to the chase? Here's one of the things I think you need to address to zero in on the issue. This is a tough hurdle for you because it relates to the province of the commission to make findings of that. It also relates to them to assess the credibility of the witnesses, including the claimant. I think to cut to the chase, the arbitrator cited inconsistent histories of the accident. I mean, the claimant never voiced any complaint beyond the hand lacerations until weeks had passed and he was laid off. He gave a different description of the accident, inconsistent descriptions of how the accident happened. And I think, quite frankly, looking at it, there's a question that there was a credibility issue. They didn't really believe your claim. I agree. I agree that that's exactly... So tell us why that's erroneous. Well, I don't believe that the credibility of the client is what's in question here. I believe it's the findings of the medical professionals that are inconsistent with what the arbitrator found. In fact, you're right that he did not make a complaint in a medical document until almost four weeks when he went to see his... And after he was laid off. Yes, Your Honor. You know, it was his unfortunate luck that there was no work when he came back. By the way, my shoulder hurts now that I'm not working. But he had positive findings after that that are not a question of my client's credibility. And Dr. Freitag, who was the one who treated him for his back, indicated in his deposition testimony that those types of complaints were not complaints that would be immediately apparent after the injury, that it would take time for those... He says that the cervical findings following an injury of this type would be gradual and not immediate. In fact, it could take a few days or a few weeks. Isn't there some contrary medical evidence? Isn't the testimony of Burris and Cantrell to the contrary? Burris testified as a general rule if the individual falls and he neck or shoulder symptoms would manifest itself within 24 to 48 hours. Cantrell likely stated the same thing within 24 to 72. So you've got some pretty strong contrary medical evidence in the record, don't you, to that argument? There is some contrary evidence. However, I don't know how you get past the positive clinical findings that they all agree are there. But isn't it up to the Commission to decide between the conflicting medical evidence? It is as long as there isn't an opposite conclusion that's the proper conclusion. And I believe it is based on those clinical findings and the fact that you can't count per the testimony of the experts in the case, you can't count on these things popping up immediately. And that's backed by all the positive findings with regard to the shoulder and the back that are in the file. There is some mention that eight or nine months prior to the injury at work that he did go to the emergency room because he stepped on a rake in the yard and the rake popped up and hit him on the head. And I'm with you. He's in a very bad cycle, isn't he? Yeah, he is in bad luck. But at that time I believe you'll find that there was a CT scan that found no positive findings in his neck at that time. But yet then after this injury at work, he does have them and that's not something that he can make up. You're doing a good job, I would have to concede, of hanging in there. But how do you explain, I mean, the inconsistent medical histories that he gives to his treatment providers? I mean, this is him saying, giving these inconsistent descriptions. How can you blame that on the employer or on the doctors? I'm not blaming anything on the employer here. I have to tell you that Mr. Philback is not a highly intelligent man and he's also somewhat could be described as verbally and analytically challenged. You know, he's not the type of guy that I know, in my experience, is able to really verbalize himself very well. But again, I'm not talking about the fact that he did complain to his supervisors while he was working light duty. I'm leaving that out because the arbitrator already decided he wasn't credible because of the inconsistency. I'm only focusing on the positive findings in medical records. For that reason, we think that the arbitrator's decision should be reversed and it should be looked at for causal connection, potential additional treatment, CTD, PPD, whatever. That arbitrator should find. If there's nothing else, then I'll reserve any time remaining for rebuttal. Thank you, counsel. Counsel, please. Good morning. May it please the court, my name is David Cohort. I'm here on behalf of the appellee, Keller Construction. I'd like to thank the court for the opportunity to present my client's position in this case. I realize that opposing counsel and the justices have already touched on our motion to dismiss the appeal. And I believe it was opposing counsel's position that that was by and large a mistake and only referenced in limited capacity in their brief. I would argue, to the contrary, all the legal arguments set forth in... Last two lines. We go to page 20. Page 21. Tell me what it is they're arguing there. I agree, your honor, that both standards are set out to some degree in the brief. Although I would argue also that the conclusionary statements made in the brief, particularly pages 23 to 24, page 25, and also pages 18 through 19, mention almost exclusively the arbitrator's alleged failure to set forth at least some minimal basis to provide a basis for review in this case. Well, assuming they forfeited that issue because they didn't raise it before the commission, why can't they argue the manifest waive issue on causal connection? And I believe that that is truly the heart of this case, and I believe that that is the singular simple issue that's present here. Yeah, but the fact that it's in their brief defeats your motion to dismiss the case. I mean, there's something different between moving to strike one argument and moving to dismiss a case. If you move to dismiss the entire case, she's got the argument here. I would argue that, your honor, that that is the only issue quoted in the brief. It's contrary to what was in their docketing statement. I agree that it's almost like an end around in that the arguments made could be translated to manifest wait, but just for the purposes of our motion, I'd just point that out. But you're not going to press the motion now? Not particularly. I think that the real issue here is manifest wait. I don't think there's any arguing that, and I'm certainly comfortable with our arguments in that regard. I believe that, again, that manifest wait is the singular issue in this case. The case was determined strictly upon the appellant's credibility at trial. And getting to that issue specifically, on the manifest wait issue, it is the appellant's burden to prove that the findings of the arbitrator and the commission were so clearly erroneous that the opposite conclusion must be the proper one. And I think it's very difficult, considering the facts present in this case, to argue that the arbitrator and the unanimous commission were, in fact, dead wrong in concluding that the appellant failed to demonstrate the credible causal connection between his accident and his alleged neck and shoulder problems. I would argue, to the contrary, that the arbitrator and the commission were precisely right. I think that there are three major points supporting the arbitrator and the commission's findings of fact in this case. The first of which are that the appellant had problems with his neck, which predated his work injury by a matter of mere months. He had every opportunity to disclose that. He was seen by at least four or five doctors in this case, and he related no relevant past history to any of them. More importantly, the appellant had the opportunity to reveal this history again at trial when he was under oath, and he again gave a false and misleading statement that he did not have any prior problems involving his neck. I think the crucial significance of this failure to disclose this past history is clear. All of the doctors who testified in this case were testifying based upon the specific history provided to them that the appellant did not have any prior problems involving the parts of the body at issue. And I think one would certainly expect a doctor to be unable to accurately comment upon medical causation when they don't have an accurate picture presented to them. Was there any evidence in the record to support counsel's argument that there can be a delay in the onset of the symptoms on the shoulder injury? On the shoulder injury specifically? All of the doctors mentioned that one would expect those types of symptoms to manifest themselves within 24 to 48 hours. And in this case you have two weeks of treatment at the direction of Dr. Burris. You have three visits, and at all of those visits the issue was a hand laceration and a hand laceration only. This only became more than a hand laceration after Mr. Philback was laid off. And then weeks later he mentioned shoulder pain. Months after that he mentions neck pain. What about Dr. Freitag? Doesn't that help support her position? Your Honor, I would argue that Dr. Freitag was provided with such a misleading and incorrect history that I don't think his opinions are worth much. Quite frankly, in the record it was cited that Dr. Freitag was provided with conflicting documents by the appellant, one of which indicated that his symptoms began immediately following the accident. The other document contained in Dr. Freitag's notes indicated that the appellant's complaints, or that the appellant probably didn't mention anything with regard to his complaints because he didn't think he was hurt. And again, Dr. Freitag was also unaware of the incident involving the rake, an injury from February 2007, for which the appellant treated a minimum of two months, at least until April. What does this rake have to do with this case again? He indicated that he was hit in the head by a rake. I don't know if he stepped on it or there was some indication. He was hit by a rake in the head. He indicated in the medical records that he felt like his head was going to blow off. He complained of severe neck pain following that incident. And he treats for a minimum of two months, but again, we're in the dark with regard to the extent of those complaints and the extent of that treatment because he told every single doctor, our IME doctor, his own doctors, that he had no prior history of neck problems. He told the arbitrator at trial that he had no prior history. And so I think the issue is, I think it's really a black mark on his record. He's given every opportunity to come clean with regard to this medical history. He tells four or five doctors, no prior history, no prior complaints to these parts of the body. He tells the arbitrator at trial, I had no prior problems. And again, it seems convenient that we have a hand laceration until he's laid off. Weeks later, he starts mentioning other things. And, you know, I think that the record makes it clear that the petitioner's or, I'm sorry, the appellant's credibility is a major, major problem in this case. And that's up to the commission to assess. And they did. And they did. And they concluded that they unanimously affirmed the findings of the arbitrator. I believe that the other issue, or another issue, also, I guess, getting to that problem of credibility, is his description of the accident. At trial, the appellant gave two conflicting histories to the arbitrator as to how this accident occurred. At one point, he said that he fell from a height and caught his hand on rebar and sustained a laceration in these various injuries. And then at another time, minutes later, he says that he stumbles forward and catches his hand on rebar. He tells Dr. Freitag that he fell off a bridge which caused his injury. And these are all vastly differing accounts. And I think that they really point out this petitioner's problems with telling the truth. Another issue that's present in the record is a document that made its way into the hands of Gateway Rehabilitation, the physical therapy provider in this case. And that document says, or is entitled, The Story of Scott Philback's Workers' Compensation Plan. And in that document, it references Mr. Philback as my guy and specifically states, and I quote, it is important to go over this and make him say to you that. And then goes into a history of the accident. And I can't imagine a circumstance where someone, if someone is telling the truth, you have to make him tell you this. Does she answer, does she posit a plausible theory that there's some inability to articulate things? That's present nowhere in the record. None of the doctors have mentioned any sort of difficulties that Mr. Philback had describing the history of his accident. I think if you look through the trial transcript, there's no evidence that he's incapacitated or suffers from some sort of handicap. There was no indication at trial that he had problems with his memory. I think that that's, you know, again, that's trying to explain away a lot of the problems in this case. And it's present nowhere in the record, Your Honor. Anyway, the case doesn't turn on that. It's a manifest way of evidence. Correct. Correct. Is there anything in the record of where this document came from? There is not, Your Honor. It's not signed. There is a reference to Mr. Philback as my guy. But there's no indication. There was also a similar history, I believe, attached to an exhibit to the deposition of Dr. Freitag that provided a different history. And I think at trial Mr. Philback indicated that that history was typed out by his girlfriend. So that's our only information on that. The other problem, I believe, which speaks to the petitioner or the appellant's credibility is the onset of symptoms. I believe I've gotten into that briefly, that we have a hand laceration. He's seen on three occasions by Dr. Burris. Dr. Burris testifies that had Mr. Philback complained of anything other than a hand laceration during his multiple visits to that office, he would have certainly, as a matter of practice, put that in his note somewhere. Mr. Philback alleges some sort of conversation occurring with Dr. Burris by his secretary's desk where he allegedly mentioned some sort of shoulder complaints. Dr. Burris specifically refuted that in his deposition testimony. In conclusion, Your Honors, I would argue that the issue before this court is simple, and it is, were the arbitrator and the commission so clearly wrong in their findings in this case that the record commands that the opposite result be reached? And I would argue that they were correct.  Thank you. Rebuttal, please. Thank you, Your Honor. Respectfully, counsel spent a lot of time talking about credibility of Mr. Philback. Arbitrator already decided to find him uncredible. I'm past that issue. I am, again, talking about medical documentation and particularly positive clinical objective findings.  The record, there is a CT scan of the neck that shows no positive findings. Now, after this accident at work, he has positive findings regarding his back and his neck that are documented in the record of Dr. Freitag and the other doctor at SIU. You just can't make that stuff up. That's not a credibility issue. Having said that, again, for those reasons, I believe that the arbitrator's decision was completely opposite of what it should have been given that evidence. For those reasons, I ask that you send it back down so that the arbitrator can take a look at it for continued treatment, etc. If it pleases the court, that's all I have. Thank you, counsel. The court will take the matter under advisement.